UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROLANDO CHACON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:17-cv-08434 |
| | ) | |
| v. | ) | Hon. Judge Ronald A. Guzman |
| | ) | |
| COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, *et al.*, | ) ) | Hon. Magistrate Judge Sidney I. Schenkier |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND STAY LITIGATION**

Now comes the Plaintiff, ROLANDO CHACON ("Plaintiff"), by and through his attorneys, and for his Response to the Motion to Compel Arbitration and Stay Litigation filed by Defendant COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC ("Comcast"), Plaintiff hereby states as follows:

**I.      INTRODUCTION**

Plaintiff filed his Complaint (Document #1), and subsequently his First Amended Complaint (Document #34), alleging that Comcast placed numerous unsolicited automated telephone calls to Plaintiff's cellular telephone without his consent, and for which he was not the intended recipient, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. At the time Plaintiff started receiving these telephone calls, he was not a customer of Comcast. In fact, Comcast was not even calling for Plaintiff himself. Rather, the callers kept asking for someone named Luke Johns or Luke Johnson. *See* Declaration of Plaintiff, filed as an attachment to this Response, ¶¶ 3-9. *See also* Document #34, ¶¶ 16-27.

The TCPA was designed to prevent automated telephone calls like the ones described herein, and to protect the privacy of citizens like Plaintiff. The U.S. Supreme Court has noted that consumers are outraged over the proliferation of automated telephone calls that are intrusive, nuisance calls, found to be an invasion of privacy by Congress. *See Mims v. Arrow Fin. Servs. LLC*, 132 S.Ct. 740, 745 (2012). "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Id.* at 744. "Congress referred to the interest protected by the TCPA as a 'privacy' interest, noting that '[e]vidence...indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.' TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional statement of findings)." *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838 at *2, No. 11 C 5886 (N.D. Ill. August 10, 2012).

In response to Plaintiff's Complaint, Defendant filed a Motion to Compel Arbitration and Stay Litigation (Document #19), and its accompanying Memorandum in Support (Document #20). Defendant claims that Plaintiff agreed to its "Comcast Agreement for Residential Services," (the "Subscriber Agreement") which contains a "Binding Arbitration" provision which would cover this dispute. Plaintiff asserts that the arbitration provision is not enforceable for two reasons.

First, Defendant has failed to provide any evidence by which this Court could conclude that Plaintiff entered into the Subscriber Agreement. To the contrary, Plaintiff denies that he did so. Second, the claims Plaintiff has raised in this lawsuit are outside the scope of Defendant's "Binding Arbitration" clause. Plaintiff's claims do not relate to his prior relationship with Comcast when, for a short time, he was a Comcast customer. Rather, Plaintiff's claims relate to someone

else's relationship with Comcast who bears no relationship to Plaintiff, someone named Luke Johns or Luke Johnson.

## II. APPLICABLE LEGAL STANDARDS

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, arbitration can only be compelled if three elements are shown, "a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich American Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). "Whether the parties have agreed to arbitrate is a question normally answered by the court rather than by an arbitrator. The issue is governed by state law principles governing contract formation." *Continental Casualty Company v. American National Insurance Company,* 417 F.3d 727, 731 (7th Cir. 2005), citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), and *Reliance Ins. Co. v. Raybestos Prods. Co*., 382 F.3d 676, 678–79 (7th Cir. 2004).

"Courts 'evaluate agreements to arbitrate under the same standards as any other contract,' which include 'all general principles of state law.'" *Allscripts Healthcare, LLC v. Etransmedia Technology, Inc.*, 188 F.Supp.3d 696, 700 (N.D.Ill. 2016), citing *Tinder v. Pinkerton Security*, 305 F.3d 728, 733 (7th Cir. 2002), and *Green v. U.S. Cash Advance Ill., LLC*, 724 F.3d 787, 791 (7th Cir. 2013).

"[B]ecause arbitration is a matter of contract, 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012), citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, (2002) "Rather, 'courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms.'" *Id.*, citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 338 (2011).

"[T]he FAA does not require parties to arbitrate when they have not agreed to do so…nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement…" *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478 (1989) (citations omitted). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986) (citations omitted).

### III. DEFENDANT CANNOT COMPEL ARBITRATION BECAUSE NO BINDING CONTRACT WAS CREATED BETWEEN THE PARTIES.

"When a 'meeting of the minds' question arises, Illinois follows the objective theory of intent." *Newkirk v. Village of Steger*, 536 F.3d 771, 774 (7th Cir. 2008), citing *Village of South Elgin v. Waste Mgt. of Ill., Inc.,* 348 Ill.App.3d 929, 941 (2nd Dist. 2004). "An Illinois court would therefore look first to the written records, not to mental processes." *Id.*, citing *Laserage Technology Corp. v. Laserage Laboratories, Inc*., 972 F.2d 799, 802 (7th Cir. 1992).

"Secret hopes and wishes count for nothing. The status of a document as a contract depends on what the parties express to each other and to the world, not on what they keep to themselves." *Skycom Corp. v. Telstar Corp*., 813 F.2d 810, 814–15 (7th Cir. 1987). "Thus, regardless of other expressions, this court must look first to the written records of what took place to figure out what the parties have done." *Newkirk*, 536 F.3d at 774.

In this case, the analysis is rather simple. Defendant has presented no evidence to support a finding that Plaintiff entered into the alleged Subscriber Agreement which contains the arbitration provision. Rather, the sworn statement Defendant has provided only states that (1) it was Comcast's regular business practice for technicians installing Comcast equipment to provide the Subscriber Agreement to customers, and (2) Comcast instructed the technicians to direct

4

customers to read and accept the Subscriber Agreement. *See* Declaration of Nicole Patel in Support of Comcast's Motion to Compel Arbitration and Stay Litigation, Document #19-1, p. 2, ¶ 6. To find that Plaintiff entered into all of the terms of the Subscriber Agreement and a binding contract was created, based solely upon this vague statement, would be contrary to applicable law.

Comcast has supplied only an unsigned Subscriber Agreement. *See* Exhibit 1 to Declaration of Nicole Patel, Document #19-1, p. 5-44. Nowhere in the Subscriber Agreement is there any indication that it applies to Plaintiff, nor is there any indication that he has agreed to its terms. The only conclusion that can be drawn from Ms. Patel's Declaration is that a technician who installed Comcast services at some point in the past *should have* given Plaintiff a copy of the Subscriber Agreement and instructed him to read and agree to it. While Ms. Patel does refer to a "version of the Subscriber Agreement that was provided to Plaintiff when service was installed," that is merely a conclusory statement, for which no evidence has been provided. *See* Document #19-1, p. 2, ¶ 7.

Missing from the record is any declaration or other evidence which would support a finding that someone actually did give the Subscriber Agreement to Plaintiff and that Plaintiff did actually agree to its terms. Many questions are left unanswered. Who was the technician who installed Plaintiff's Comcast service? Did he or she in fact present the Subscriber Agreement to Plaintiff? Did Plaintiff sign such an agreement or take other action which would indicate that he consented to its terms? To the contrary, Plaintiff has stated in his Declaration that he "never signed or agreed to anything similar to the Subscriber Agreement attached to the Declaration of Nicole Patel as its Exhibit 1." *See* Declaration of Plaintiff, ¶ 13.

It is a "basic tenet of contract law" that "in order to be binding, a contract requires a 'meeting of the minds' and a manifestation of 'mutual assent.'" *Van Tassell v. United Marketing*

*Group, LLC*, 795 F.Supp.2d 770, 789 (N.D.Ill. 2011) (citations omitted). "This requirement of manifestation of assent applies with equal force to arbitration agreements…" *Id.* at 790. Defendant has provided nothing in support of its Motion by which this Court could reach the conclusion that there was a "meeting of the minds" or a "manifestation of mutual assent" between Plaintiff and Comcast as to the Subscriber Agreement. Thus, the Binding Arbitration provision within the Subscriber Agreement is unenforceable and Defendant's Motion must be denied.

### IV. **DEFENDANT CANNOT COMPEL ARBITRATION BECAUSE THE CLAIMS IT SEEKS TO ARBITRATE ARE OUTSIDE THE SCOPE OF ITS ARBITRATION CLAUSE.**

Even if the Court were to find that Plaintiff and Defendant did enter into the Subscriber Agreement, the Binding Arbitration provision would still be unenforceable, as the claims Plaintiff has raised in this lawsuit are outside the scope of that provision.

The arbitration provision at issue states, "If you have a Dispute (as defined below) with Comcast that cannot be resolved through an informal dispute resolution with Comcast, you or Comcast may elect to arbitrate that Dispute in accordance with the terms of this Arbitration Provision rather than litigate the Dispute in court." *See* Document #19-1 at p. 30, ¶ 13.a. The following section defines "Dispute" as "any dispute, claim, or controversy between you and Comcast regarding any aspect of **your relationship with Comcast**, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence, or any other intentional tort), or any other legal or equitable theory..." *See* Document #19-1 at p. 30, ¶ 13.b (emphasis added).

However, Plaintiff's TCPA claims against Defendant do not relate to and aspect of Plaintiff's relationship with Comcast. Any such relationship, by Comcast's own admission, terminated on November 10, 2016, nearly three months before the telephone calls at issue began.

6

*See* Document #19-1, ¶ 5 and Declaration of Plaintiff, ¶ 3. The automated telephone calls Plaintiff was receiving were intended for an individual named Luke Johns or Luke Johnson. The calls clearly pertained to that individual's relationship with Comcast, not Plaintiff's. *See* Declaration of Plaintiff, ¶¶ 4, 7 and 9, and Document #34, ¶¶ 17-19, 22 and 24.

"[T]he FAA does not require parties to arbitrate when they have not agreed to do so…nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement…" *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478 (1989) (citations omitted). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986) (citations omitted). Here, while Plaintiff does not believe that he agreed to arbitrate any disputes with Comcast at all, if he did so agree, that agreement could only apply to issues arising from *Plaintiff's* Comcast service, not from service provided to another individual whom Plaintiff does not even know.

"Illinois uses in general a 'four corners' rule in the interpretation of contracts, holding…that 'if the language of a contract appears to admit of only one interpretation, the case is indeed over.'" *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998), citing *AM Internat'l Inc. v. Graphic Management Associates, Inc.*, 44 F.3d 572, 5746 (7th Cir. 1995). "The terms of an agreement, if not ambiguous, should generally be enforced as they appear, and those terms will control the rights of the parties. Moreover, any ambiguity in the terms of a contract must be resolved against the drafter of the disputed provision." *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill.2d 460, 479 (Ill. 1998).

Plaintiff believes the definition of the word "Dispute" used by Comcast in its Subscriber Agreement, as applied to the issues to be decided by the Court, can only be interpreted in one possible way. However, even if any ambiguity were found to exist, that ambiguity must be resolved against Comcast. As the drafter of the Subscriber Agreement, if Comcast wanted the arbitration provision to cover any disputes, claims or controversies whatsoever, regardless of their nature, Comcast could have drafted the provision in that manner. However, Comcast chose to draft the arbitration provision to limit the disputes, claims or controversies it covered to those arising out of each specific subscriber's relationship with Comcast. To the extent any ambiguity was created here, Comcast itself is responsible for the ambiguity and it must be resolved against Comcast.

Plaintiff's First Amended Complaint does not allege a dispute over the terms of Comcast's services. It does not allege a dispute over the cost of Comcast's services. It does not allege a dispute over the manner in which Comcast provided any services. It does not allege a dispute over Plaintiff's use of Comcast's services. It also does not allege a dispute over any specific terms of Comcast's Subscriber Agreement. It alleges the violation of a Federal statute, the TCPA, based upon unsolicited telephone calls being placed to Plaintiff, which were intended for another individual, without Plaintiff's consent. The claims Plaintiff has raised in this lawsuit are not within the scope of the arbitration provision and Plaintiff should not be compelled to arbitrate those claims. If there is any ambiguity as to this issue, it must be resolved against Comcast. Therefore, Defendant's Motion must be denied.

### V.     **PLAINTIFF HAS IDENTIFIED DISPUTED ISSUES OF FACT REGARDING THE EXISTENCE OF AN ARBITRATION AGREEMENT.**

"The party opposing arbitration must identify a triable issue of fact concerning the existence of the agreement in order to obtain a trial on the merits of the contract." *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002), citing *Saturday Evening Post Co. v.*

*Rumbleseat Press, Inc.*, 816 F.2d 1191, 1196 (7th Cir. 1987). "[C]ourts that have addressed the question have analogized the standard to that required of a party opposing summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure: the opposing party must demonstrate that a genuine issue of material fact warranting a trial exists." *Id.* (citations omitted)

"In deciding whether the party opposing summary judgment (and by analogy compelled arbitration) has identified a genuine issue of material fact for trial, 'the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.'" *Id.*, citing *Anderson v. Liberty Lobby, Inc*., 106 S.Ct. 2505, 2513 (1986). "The question therefore, is…'whether [plaintiff has] produced sufficient evidence to raise a factual issue concerning whether she and [defendant] are bound by a contract to arbitrate.'" *Versmesse v. AT & T Mobility LLC*, 2014 WL 856447 at *4, No. 3:13 CV 171 (N.D.Ind. March 4, 2014), quoting *Tinder*, 305 F.3d at 735.

In light of the issues and evidence raised by Plaintiff herein, there exists, at the very least, "a triable issue of fact concerning the existence of the [arbitration] agreement." *Tinder*, 305 F.3d at 735.

> [I]f the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard. In the event that summary judgment is not warranted because "the party opposing arbitration can demonstrate, by means of citations to the record," that there is "a genuine dispute as to the enforceability of the arbitration clause," the "court may then proceed summarily to a trial regarding 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same,' as Section 4 of the FAA envisions."

9

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3rd Cir. 2013), citing *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F.Supp.2d 474, 482 (E.D.Pa. 2011), quoting 9 U.S.C. § 4.

While Plaintiff believes he has presented enough evidence and authority for this Court to deny Comcast's Motion with prejudice, should the Court believe that a question of fact exists, Plaintiff requests that the Court deny Comcast's motion, grant the parties the opportunity to conduct discovery on the issue and set this matter for a trial regarding "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same." 9 U.S.C. § 4.

## VI. <u>CONCLUSION</u>

Plaintiff has provided the Court with several reasons why Comcast's Motion to Compel Arbitration should be denied. Comcast has provided no evidence to support a finding that a binding agreement to arbitrate was ever created between Plaintiff and Comcast. Plaintiff denies that he ever signed or agreed to Comcast's Subscriber Agreement. Comcast has only provided a declaration explaining what should have happened and what was supposed to happen, not what actually did happen in Plaintiff's instance.

Even if the Court finds that a binding agreement was created, the claims Plaintiff brought in this lawsuit are outside the scope of Comcast's arbitration provision. The facts giving rise to Plaintiff's claims in this case relate to another individual's relationship with Comcast, not his own. To the extent any ambiguity exists as to this issue, it must be resolved against Comcast, as the drafter of the arbitration provision.

At the very least, Plaintiff has demonstrated the existence of a triable issue of fact concerning the existence of the arbitration agreement, which would allow the parties to conduct

discovery related to the agreement and present evidence at a trial on those issues. For the foregoing reasons, Comcast's Motion to Compel Arbitration must be denied.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter an order denying Comcast's Motion to Compel Arbitration with prejudice, and granting such other relief as the Court deems appropriate under the circumstances.

RESPECTFULLY SUBMITTED,

ROLANDO CHACON

By: /s/ David B. Levin
 Attorney for Plaintiff
 Illinois Attorney No. 6212141
 Law Offices of Todd M. Friedman, P.C.
 333 Skokie Blvd., Suite 103
 Chicago, IL 60062
 Phone: (224) 218-0882
 Fax: (866) 633-0228
 dlevin@toddflaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 7, 2018, a copy of the foregoing Response to Defendant's Motion to Compel Arbitration and Stay Litigation was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ David B. Levin
Attorney for Plaintiff