# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROLANDO CHACON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 CV 8434 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| COMCAST CABLE COMMUNICATIONS ) | |
| MANAGEMENT, LLC AND DOES 1-10, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, defendant's motion to compel arbitration and stay litigation is denied.

## BACKGROUND

Plaintiff, Rolando Chacon, alleges in this putative class action that defendant Comcast Cable Communications Management, LLC ("Comcast") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), when it repeatedly called him in February and March 2017, asking for someone named Luke Johns or Luke Johnson. (ECF No. 34, First Am. Compl.) Comcast moves to compel arbitration and stay this action on the basis that Chacon entered into a Subscriber Agreement with Comcast that requires arbitration of the parties' disputes.

## DISCUSSION

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), governs the enforcement of arbitration agreements. *Int'l Ins. Co. v. Caja Nacional de Ahorro y Seguro*, 293 F.3d 392, 395 (7th Cir. 2002). The FAA "evinces a national policy favoring arbitration" and "requires federal

courts to place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1059-60 (7th Cir. 2018) (internal quotation marks and citations omitted). The Court will compel arbitration under the FAA "if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Id.* at 1060. The third element is satisfied because Chacon refuses to arbitrate.

In support of its motion, Comcast submits the declaration of Nicole Patel, a Comcast Director of Regulatory Compliance, who states that Comcast's business records reflect that Chacon subscribed to Comcast's Xfinity cable service for an apartment on South Harding Avenue in Chicago in late January 2015, and Chacon then received and paid for service in connection with his Comcast account until his service was disconnected in November 2016. (ECF No. 19-1, Decl. of Nicole Patel ¶¶ 1, 5.) Patel states that Comcast's regular business practice since prior to 2015 is for its installation technicians to provide Comcast's Subscriber Agreement to customers in connection with the installation and for the technicians to direct customers to read and accept the Subscriber Agreement when activating service. (*Id.* ¶ 6.) Attached to Patel's declaration is a copy of the "Comcast Customer Privacy Notice" and the "Comcast Agreement for Residential Services" ("Subscriber Agreement") as they existed at the time Chacon subscribed to Comcast's service. (*Id.* ¶ 7 & Ex. 1.) The Subscriber Agreement contains a binding arbitration provision as well as a provision that allows subscribers to opt out of arbitration by notifying Comcast within thirty days of receiving the Subscriber Agreement. (*Id.* ¶ 9.) Patel states that Comcast's regular business practice is to maintain records of such opt-out requests, and it has no record of Chacon's having notified Comcast that he wished to opt out of the arbitration provision. (*Id.* ¶¶ 10-11.)

In response to Comcast's motion, Chacon submits a declaration in which he states that he previously had Comcast's Xfinity service, but no longer has an active Comcast account; he has no recollection that the Comcast installation technician who installed his service provided him with a Subscriber Agreement; he never signed or agreed to anything similar to the Subscriber Agreement attached to Patel's declaration; the telephone calls he received from Comcast did not relate to his previous Comcast Xfinity service, but to someone named Luke Johns or Luke Johnson; and he does not know anyone by those names. (ECF No. 35-1, Decl. of Rolando Chacon ¶¶ 5, 11-14.)

In reply, Comcast argues that Chacon's statement that he does not recall being provided with the Subscriber Agreement is insufficient to raise a genuine issue of fact as to whether it was provided to him, but "[t]o avoid any doubt," Comcast submits a supplemental declaration from Patel. (ECF No. 37, Def.'s Reply at 1.) Patel states that Comcast's records reflect that after Chacon ordered Xfinity service, a Comcast technician installed that service on March 1, 2015. (ECF No. 37-1, Suppl. Decl. of Nicole Patel ¶ 5.) In connection with that installation, Chacon signed a work order that day that stated: "If this work order relates to the initial installation of services, I acknowledge receipt of the Comcast Welcome Kit which contains the Comcast Residential Customer Agreement, the Comcast Cable Subscriber Policy Notice and other important information about the services. I agree to be bound by the Comcast Customer Agreement which constitutes the agreement between Comcast and me for the services as well as any applicable Comcast acceptable use policies." (*Id.* ¶¶ 6-7, Ex. 1, at 2.)

For purposes of the instant motion, the Court assumes, without deciding, that Chacon entered into the Subscriber Agreement with Comcast and that it is enforceable.[1]  The Subscriber Agreement provides in pertinent part:

- This Agreement contains a binding arbitration provision in Section 13 that affects your rights under this Agreement with respect to all Service(s).

- You will have accepted this Agreement and be bound by its terms if you use the Service(s) or otherwise indicate your affirmative acceptance of such terms.

- If you have a Dispute (as defined below) with Comcast that cannot be resolved through an informal dispute resolution with Comcast, you or Comcast may elect to arbitrate that Dispute in accordance with the terms of this Arbitration Provision rather than litigate the Dispute in court. Arbitration means you will have a fair hearing before a neutral arbitrator instead of in a court by a judge or jury.  Proceeding in arbitration may result in limited discovery and may be subject to limited review by courts.

- The term "Dispute" means any dispute, claim, or controversy between you and Comcast regarding any aspect of your relationship with Comcast, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence, or any other intentional tort), or any other legal or equitable theory, and includes the validity, enforceability or scope of this Arbitration Provision.  "Dispute" is to be given the broadest possible meaning that will be enforced.

- . . . THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED OR LITIGATED ON A CLASS ACTION OR CONSOLIDATED BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC (SUCH AS A PRIVATE ATTORNEY GENERAL), OTHER SUBSCRIBERS, OR OTHER PERSONS.

---

[1]Although Chacon characterizes the Agreement as "unenforceable," he disputes only its formation and scope, not its legality, validity, or conscionability in the event that an agreement was formed.  Nor does he argue that the arbitration provision does not survive the termination of his service with Comcast.

- This Arbitration Provision shall survive the termination of your Service(s) with Comcast.

(Patel Decl., Ex. 1, Subscriber Agreement, at 1, 16-18.)

The critical issue here is whether the second element identified in *A.D.* for compelled arbitration is satisfied: is the current dispute within the scope of the Subscriber Agreement's arbitration provision? Comcast contends that Chacon's claims "fall squarely" within its scope because Chacon's allegations that Comcast called his phone "are indisputably related to an 'aspect' of his 'relationship' with Comcast." (ECF No. 20, Def.'s Mem. Supp. Mot. at 6.) Comcast does not further explain how this is so. In response, Chacon asserts that they are not because the calls had nothing to do with the service Comcast had provided to him; the calls were not even intended for Chacon, but for a different individual who is a stranger to Chacon, and thus pertained to that individual's relationship with Comcast, not Chacon's.

The Court agrees with Chacon. He alleges in this case that Comcast violated the TCPA by repeatedly making phone calls to him that were intended for another person. That is not a dispute regarding an aspect of Chacon's relationship with Comcast (which was a contractual relationship), so it does not fall within the plain language of the arbitration provision in the Subscriber Agreement. Because arbitration agreements are contracts, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *A.D.*, 885 F.3d at 1060 (internal quotation marks and citation omitted); *see also Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 857 (7th Cir. 2015) ("A party can be forced to arbitrate only those matters that he or she has agreed to submit to arbitration . . . ."). The circumstances here stand in contrast to situations in which the plaintiff subscribed to defendant's service, terminated that service, and subsequently received calls from the defendant that

5

pertained to the parties' relationship, such as calls attempting to collect an outstanding debt for the previous service. *See, e.g., Mayfield v. Comcast Cable Commc'ns Mgmt., LLC*, No. 1:15-CV-483-CAP, 2015 WL 10173611, at *3 (N.D. Ga. June 19, 2015). Chacon did not agree to arbitrate disputes that do not concern an aspect of his relationship with Comcast, so the Court will not compel arbitration.

In its reply brief, Comcast asserts that the issue of whether this dispute lies within the scope of the arbitration provision "raises an issue for the arbitrator, not the Court, to decide," because the parties agreed to arbitrate even "gateway" questions of arbitrability. (Def.'s Reply at 6.) But Comcast raises this issue for the first time in its reply brief, so the Court will not consider the argument. *See Dexia Crédit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived.").

## CONCLUSION

Defendant's motion to compel arbitration and stay litigation [19] is denied.

**DATE**: June 20, 2018

_____
**Ronald A. Guzmán**
**United States District Judge**